# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| Robert J. Bevilacqua | : | CHAPTER 7 |
| | : | |
| and | : | |
| | : | |
| Bernadette E. Bevilacqua | : | BANKRUPTCY NO. 05-34188 |
| | : | |
| Debtors | : | |

## ORDER

AND NOW, upon consideration of the Debtors' Motion to Punish Capital One FSB and Capital One Services for Contempt Pursuant to 11 U.S.C. 326(h), for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that,

1. Debtors' Motion to Punish Capital One FSB and Capital One Services for Contempt Pursuant to 11 U.S.C. 326(h) is **GRANTED** in part, and **DENIED** in part.

2. The Motion is **GRANTED** as to Capital One FSB.

3. The Motion is **DENIED** as to Capital One Services.

4. Debtors are awarded $ 1,283.33 in damages against Capital One FSB for its violation of Automatic Stay, 11 U.S.C. § 362(a).

Date: 4/19/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| Robert J. Bevilacqua | : | CHAPTER 7 |
| | : | |
| and | : | |
| | : | |
| Bernadette E. Bevilacqua | : | BANKRUPTCY NO. 05-34188 |
| | : | |
| Debtors | : | |

## MEMORANDUM

**BY: ERIC L. FRANK, United States Bankruptcy Judge**

### I. INTRODUCTION

Before me is the Debtors' Motion to Punish Capital One FSB and Capital One Services for Contempt Pursuant to 11 U.S.C. 326(h) ("the Motion"). The Debtors seek monetary sanctions against Capital One FSB ("Capital One") and Capital One Services, Inc. ("Capital One Services") for their alleged willful violation of the automatic stay. I held a hearing on this matter on March 29, 2006. For the reasons stated herein, I will grant the Motion in part, and deny it in part, and award monetary damages to the Debtors.[1]

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(b) and 28 U.S.C. § 1334. This matter is a core proceeding. See 28 U.S.C. § 157(b)(2)(A), (O).

---

[1] This Memorandum shall constitute the findings of fact and conclusions of law of the Court pursuant to Fed. Rule of Bankr. P. 7052 as made applicable to this contested matter and incorporated by Fed. Rule of Bankr. P. 9014.

-1-

## II. BACKGROUND

The Debtors, Robert J. and Bernadette E. Bevilacqua, commenced the above chapter 7 bankruptcy case by filing a voluntary petition on October 4, 2005. On Schedule F of their bankruptcy schedules, the Debtors listed Capital One as a non-priority, unsecured creditor.[2] The Debtors also listed Capital One on the mailing matrix filed the same day as the bankruptcy petition pursuant to Fed. R. Bankr. P. 1007(a). Accordingly, Capital One was provided a notice of the Debtors' bankruptcy filing when it was served a Notice of the Meeting of the Creditors on October 20, 2005.[3]

Shortly after filing their petition, the Debtors began to receive requests for payment on the Capital One account, which was in Mr. Bevilacqua's name. First, the Debtors received a statement from Capital One dated November 15, 2005 that contained a $35.00 "Past Due Fee" and new finance charges, in addition to its outstanding balance. Then, two days later, on November 17, 2005, the Debtors received a letter from Capital One Services reminding Mr. Bevilacqua that his account was past due. The letter requested Mr. Bevilacqua to call their representatives if he was experiencing "financial hardships that are making it difficult to pay bills." It also stated at the bottom in bold type face:

---

[2] The Debtors listed two (2) credit card accounts with Capital One on Schedule F. The first was Account # 5178051856704950 from Richmond, VA for a claim in the amount of $114.00. The second was Account # 4115072218544446 from St. Louis, MO for a claim in the amount of $1363.48. The second account is the subject of the Motion.

[3] I may take judicial notice of the docket in this case and the content of the bankruptcy schedules for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607 (Bankr. E.D. Pa. 1998).

-2-

**The purpose of this letter is to collect a debt. Any information obtained will be used for that purpose.**

On November 30, 2005, the Debtors' attorney responded by letter to Capital One Services advising it of the Debtors' bankruptcy petition stating that the collection efforts were unlawful. Despite this, the Debtors received another statement from Capital One dated December 15, 2005 with more finances charges, a $29.00 "Overlimit Fee," and another $35.00 "Past Due Fee." The Debtors' attorney again responded in a letter to Capital One Services dated December 22, 2005. Thereafter, the Debtors received two (2) more statements from Capital One on January 15 and February 15, 2006. The January 15, 2006 statement contained finance charges, as well as another $29.00 Overlimit Fee and $35.00 Past Due Fee. The February 15, 2006 statement contained only finance charges and another $35.00 Past Due Fee.

The Debtors also received approximately five (5) phone calls from a "Mr. Gill" attempting to collect the debt. The last call Debtors received was on January 4, 2006.

The Debtors filed the Motion on January 24, 2006. Neither Capital One nor Capital One Services filed a response or appeared to oppose the Motion at the March 29, 2006 hearing. No testimony was presented at the hearing.

## III. DISCUSSION

### A. Violation of the Automatic Stay

The automatic stay under § 362 of the Bankruptcy Code "is one of the fundamental debtor protections provided by the bankruptcy laws." H & H Beverage Distributors v. Department of Revenue of Com. of Pa., 850 F.2d 165, 166 (3d Cir. 1988) (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 6296)). "The primary purposes of the automatic stay provisions are to effectively stop all

-3-

creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and [his] creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way." Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999) (citation omitted). In a chapter 7 case, the stay provides the debtor with immediate relief from financial stress pending the entry of the discharge order. See In re Rusnak, 184 B.R. 459, 463 (Bankr. E.D. Pa. 1995) (citations omitted).

The Debtors contend that Capital One's and Capital One Services' actions violated the automatic stay and that they are entitled to damages under §362(h), which has been recodified as § 362(k).[4] Section 362(h) provides that "[a]n individual injured by a willful violation of a stay provided by this section shall recover actual damages including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). Accordingly, the court must find that the violation was "willful" to award damages.

"Willful" has been defined as deliberate or intentional, In re B. Cohen & Sons Caterers, Inc. 108 B.R. 482, 485 (E.D. Pa 1989), and has been found where the party acts with knowledge that a bankruptcy petition has been filed. In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3d Cir. 1992) (citing In re University Medical Center, 973 F.2d 1065, 1087-88 (3d Cir. 1992)). A "willful violation" does not require a finding of specific intent to violate the automatic stay. Id. Rather, willfulness is found if the defendant knew of the automatic stay and the defendant's actions which violated the automatic stay were intentional. Id.; accord, In re Atlantic

---

[4]Section 362(h) was recodified at §362(k) as a result of the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, Stat. 119 Stat. 23 (2005). This bankruptcy case was filed prior to BAPCPA's enactment. Therefore, I will employ the old codification, §362(h).

Business and Community Development Corporation, 901 F.2d 325, 329 (3d Cir. 1990) (citing In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989)).

### B. The Respective Roles of Capital One and Capital One Services

The evidence shows that Capital One had knowledge of the Debtors' bankruptcy petition when the court served it notice of the Meeting of the Creditors on October 20, 2005. Despite this, Capital One persisted in collecting on the account by continuing to send its monthly statements with additional fees and charges in November, December, January and February.[5] Undoubtedly, Capital One willfully violated the automatic stay by causing such statements to be sent, particularly in January and February 2006 after the Debtors' counsel sent letters to Capital One Services advising it of the Debtors' bankruptcy petition. See In re Driggers, 204 B.R. 70, 72 (Bankr. N.D. Fla. 1996) (finding credit card issuer willfully violated the automatic stay by

---

[5] At Paragraph 10 of the Motion, Debtors also made one averment regarding five (5) collection phone calls they received:

> In addition to the above, respondents have recently telephoned debtors at least five times attempting to collect the listed debt. The calls were from a "Mr. Gill", with a return number of 1-888-785-7719, who was calling for respondents attempting to collect the listed debt. The last such phone call being made January 4, 2006.

I understand paragraph 10 to mean that the Debtors received collection calls pertaining to Mr. Bevilacqua's account with Capital One. However, as the Motion was submitted as the sole offer of proof, I conclude that this one averment is inadequate for a finding that the collection calls were a willful violation of the automatic stay. I cannot discern who-- Capital One or Capital One Services – made the collection calls. This distinction is significant because I find that Capital One and Capital One Services played different collection roles and, consequently, must be treated separately for purposes of this Motion. I also do not know with any level of specificity when these calls were made or how the Debtors responded to the calls. Therefore, I cannot factor the telephone calls averred in Paragraph 10 of the Motion into my analysis.

continuing to send bills to debtors even after it received notice of debtor's bankruptcy). See also In re Rijos, 263 B.R. 382, 392 (1st Cir. BAP 2001) (credit card company could not assert a "computer did it defense" for computer-generated bills sent to a debtor in violation of the automatic stay). Cf. In re Sims, 278 B.R. 457, 470-71 (Bankr. E.D. Tenn. 2002) (credit card issuer did not willfully violate the automatic stay when it failed to terminate the accrual of interest, late fees and overlimit fees on the debtor's credit card account because they were internal bookkeeping entries and never communicated to debtor).

As to Capital One Services, I find that Capital One Services did not have knowledge of the Debtors' bankruptcy until receipt of the November 30, 2005 letter the Debtors' counsel sent in response to Capital One Services' November 17, 2005 collection letter. I also find that the November 17, 2005 letter was the only collection attempt Capital One Services made, that the collection attempt was made before Capital One Services had knowledge of the Debtors' pending bankruptcy case and that Capital One Services ceased its collection efforts upon receipt of counsel's November 30, 2005 letter.[6] Therefore, I conclude that Capital One Services did not willfully violate the automatic stay.

### C.  Damages for Willful Violation of the Automatic Stay

Having proven that only Capital One willfully violated the automatic stay, I will now address the Debtors' damages.

#### 1.  Actual Damages

The Debtors' requested compensation for the one (1) vacation day Mr. Bevilacqua used

---

[6] See note 5.

-6-

so that he could attend the March 29, 2006 hearing. Mr. Bevilacqua is a dockworker who earns $18.75 per hour and works eight (8) hours per day. Accordingly Mr. Bevilacqua is entitled to actual damages for the lost wages he incurred in the amount of $ 150.00.[7]

### 2.   Punitive Damages

Debtors' Motion requested a punitive damages award of $3,500, or $500 for each violation of the automatic stay.

The standard for determining the existence of the "appropriate circumstances" to warrant an award for punitive damages for violation of the automatic stay was first articulated in this district in In re Wagner, 74 B.R. 898 (Bankr E.D. Pa. 1987). In Wagner, the court stated that:

> Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.

In re Wagner, 74 B.R. at 903-904.

The courts following Wagner applied the following factors to determine whether to award punitive damages: (1) the nature of the defendant's conduct; (2) the defendant's motive; (3) any provocation by the debtor; and (4) the defendant's ability to pay. In re Patterson, 263 B.R. at 97;

---

[7] There appears to be an emerging consensus that emotional distress damages may be recovered in an award of actual damages under 362(k)(1). See In re Dawson, 390 F.3d 1139, 1148 (9th Cir. 2004); Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265 (1st Cir. 1999). But see Aiello v. Providian Fin Corp, 239 F.3d 876 (7th Cir. 2001). I do not need to address this issue because the Debtors did not request such an award.

In re Cohen & Sons Caterers, Inc., 108 B.R. 482, 487 (E.D. Pa. 1989), appeal dismissed, 908 F.2d 961 (3d Cir. 1990), aff'd, 944 F.2d 896 (3d Cir. 1991); In re Aponte, 82 B.R. 738, 745-746 (Bankr. E.D. Pa. 1988).

A punitive award is aimed toward "particularly egregious conduct" and is, according to the Third Circuit, "reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." In re Patterson, 263 B.R. at 97 (quoting Cochetti v. Desmond, 572 F.2d 102, 106 (3d Cir.1978)). The amount of punitive damages awarded should be gauged by the gravity of the offense and the defendant's financial position because "[t]he award must be sufficient to sting the pocketbook of the wrongdoer." In re Aponte, 82 B.R. at 745-46 (quoting Mercer v. DEF, Inc., 48 B.R. 562, 566 (Bankr. D. Minn. 1985)).

Based on my consideration of the aforementioned factors, I conclude that the Debtors are not entitled to an award of punitive damages. I find that Capital One violated the automatic stay by causing credit card statements to be sent to Mr. Bevilacqua for the four months following the filing of the bankruptcy petition.[8] Although I find this conduct to have willfully violated the automatic stay, the record is insufficient for me to find the egregiousness necessary to impose a punitive award. I am not suggesting that Capital One's behavior is the type that is insulated, per se, from a punitive award. In fact, repetitious behavior that violates the automatic stay is the sort of conduct that can warrant a punitive damages award in certain instances. As such, if there are

---

[8] Though not expressly indicated in the Motion, Debtors alleged that collectively Capital One and Capital One Services violated the automatic stay at least seven (7) times. I arrive at this number because they requested $500 for each violation and asked for a total punitive damages award of $3,500.

future credit card statements sent to Mr. Bevilacqua or any other violations of the automatic stay by Capital One or Capital One Services after this Order, punitive damages may be appropriate. See In re Driggers, 204 B.R. at 72 (prospectively awarding $500 sanction per violation against credit card company for any future violations of the discharge injunction).

### 3. Attorneys' Fees

I admitted into evidence an itemized bill dated March 28, 2006 from the Debtors' attorney, Mr. Robert T Seiwell, for services rendered from November 28, 2005 through March 29, 2006. Mr. Seiwell reported that he spent 5.6 hours at $200 per hour on this matter, which included an estimation of three (3) hours for attending the March 29, 2006 hearing. I find these figures reasonable and award the Debtors $1,133.33 to pay for Mr. Seiwell's attorneys fees and costs.

An appropriate Order follows.

Date: 4/19/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE